# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| JUDITH E. MAYS, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:05CV00067 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| LINDA S. McMAHON, ACTING ) | By: James P. Jones |
| COMMISSIONER OF SOCIAL ) | Chief United States District Judge |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

*Allison Mullins, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I will affirm the final decision of the Commissioner.

I

Judith E. Mays filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claims for disability insurance benefits ("ADIB") under Title II of the Social Security Act, 42 U.S.C.A. § 401-433 (West 2003 & Supp. 2006). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id*.

When conducting this review, the court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). It is the duty of the administrative law judge ("ALJ"), not the courts, to make findings of fact and resolve conflicts in the evidence. *See id*. Accordingly, "[t]he issue before [the court], therefore, is not whether [the plaintiff] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

The plaintiff applied for DIB on June 6, 2003, alleging disability since December 28, 2002. Her application was denied at all levels of administrative review. The plaintiff received a hearing before an ALJ on November 16, 2004. By decision

dated April 20, 2005, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have timely briefed the issues and been heard at oral argument. The case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was fifty-four years old at the time of the ALJ's decision. She received a high school education, and subsequently completed four years of religious studies. (R. at 220.) She has past relevant work experience as a seamstress, customer service representative, telephone answerer, cashier, and office assistant. (R. at 73-83, 243.) The plaintiff claims disability due to ankle and foot pain, diabetes, back pain, and depression.

In rendering his decision, the ALJ reviewed the medical records relating to the plaintiff's treatment by Jennifer L. Bennett, M.D.; Michael W. Wheatley, M.D.; Eric D. Moffet, M.D.; Susan Helton, therapist; and William E. Stanley, M.Ed.

Dr. Bennett and other physicians at Coeburn Communicare have treated the plaintiff for her general health problems from January, 2002, to October, 2004. (R.

at 105-31.) At a January 18, 2002 appointment, the plaintiff's neurological examination was normal and her feet revealed no diabetic ulcers. (R. at 113.) Dr. Bennett advised the plaintiff that she was to take both Glcophage and Avandia. (*Id*.) The plaintiff had previously discontinued the use of Avandia after confusing Dr. Bennett's instructions regarding her diabetes medication. (*Id*.)

The plaintiff next returned to Dr. Bennett on March 1, 2002. (R. at 112.) At this visit, she reported that she had discontinued her use of Celexa ten days before and that she believed she was doing well without it. (*Id*.)

The plaintiff next contacted Dr. Bennett's office regarding her medications on June 14, 2002. (R. at 111.) The plaintiff requested permission to alter the medications prescribed to her. (*Id*.) In particular, the plaintiff sought permission to discontinue Glucophage. (*Id*.) Dr. Bennett agreed to the plaintiff's request on a short term basis. (*Id*.)

On August 21, 2002, the plaintiff visited Dr. Bennett complaining of ear pain, weakness and dizziness, and a shooting pain in her head. (R. at 110.) Dr. Bennett diagnosed diabetes, hyperlipidemia, and depression. (*Id*.)

On November 19, 2002, the plaintiff was seen by Dr. Bennett for a follow-up appointment. The plaintiff complained of soreness and numbness in her feet. (R. at 109.) Dr. Bennett noted that the plaintiff's extremities revealed no clubbing, cyanosis,

or edema, and no diabetic ulcers were detected on her feet. (*Id*.) The plaintiff declined to accept a prescription of Neurontin at Dr. Bennett's recommendation. (*Id.*)

The plaintiff returned to Dr. Bennett on April 7, 2003. During this visit, Dr. Bennet referred the plaintiff for a psychological evaluation. Dr. Bennett noted that the plaintiff reported that she had recently binged on food and that she had forgotten to take certain medications. (R. at 107.)

On June 6, 2003, Dr. Bennett conducted a physical examination of the plaintiff. This examination revealed normal deep tendon reflexes and light touch sensation. (R. at 106.) Dr. Bennett noted that the plaintiff's hypertension was doing well and increased her dosage of Wellbutrin. (*Id*.)

On September 23, 2003, the plaintiff returned to Dr. Bennett. Dr. Bennett reported that the plaintiff had not been checking her fasting blood sugar levels and was not watching her diet. (R. at 105.) The plaintiff claimed she was feeling less stress and anxiety. (*Id*.) She also indicated that she would not attend counseling sessions. (*Id*.)

On January 8, 2004, the plaintiff reported for a follow-up appointment. She noted that she was having pain in her breast and back soreness. (R. at 104.) Dr. Bennett recommended that the plaintiff undergo a mammogram and a colonoscophy. (*Id*.) Dr. Bennet discontinued Wellbutrin and started the plaintiff on Lexapro. (*Id*.)

- 5 -

Case 2:05-cv-00067-JPJ-PMS   Document 16   Filed 02/28/07   Page 5 of 16   Pageid#: 68

On April 5, 2004, the plaintiff requested a referral for counseling and for a disability evaluation from a physician at Coeburn Communicare. (R. at 188.) The plaintiff was noted to be tearful during the examination. (*Id.*) Depression was diagnosed and the plaintiff was referred to a therapist. (*Id.*)

On April 27, 2004, a bilateral lower extremity arterial duplex study was conducted on the plaintiff. The study revealed mild atherosclerotic changes and no hemodynamcially significant stenosis. (R. at 166.) In May of 2004, X rays of the wrist and hand revealed degenerative changes, and a lumbar spine MRI was normal other than mild proliferative changes. (R. at 163-65, 176.)

On June 3, 2004, the plaintiff returned to Coeburn Communicare complaining of dizziness and weakness. (R. at 185.) However, the plaintiff reported that she felt as if she was "in control." (*Id.*) Blood tests were ordered and the plaintiff was advised to follow-up with a psychiatric appointment. (*Id.*)

On September 30, 2003, Jule Jennings, Ph.D., a state agency psychologist, reviewed the plaintiff's medical records and concluded that the plaintiff did not have a severe mental impairment. (R. at 133, 143.) Randall Hays, M.D., also assessed the plaintiff's physical residual functional capacity. (R. at 148-56.) After reviewing the evidence, Dr. Hays concluded that the plaintiff retained the capacity to perform work at the medium exertional level. (R. at 149-50, 152.)

On July 15, 2004, the plaintiff was seen by therapist Susan Helton for a psychological intake assessment. (R. at 189-93.) On the mental status examination, Ms. Helton found that the plaintiff was oriented to time, place, person, and situation; her appearance, affect, and behavior were appropriate; her speech was normal; her insight was fair; her memory, judgment, and communication were good; her intelligence was average; and she had no thought disorder, hallucinations, or suicidal ideations. (R. at 191.) Additionally, Ms. Helton diagnosed major depressive disorder and assessed a global assessment of functioning ("GAF") score of fifty-five. (R. at 192.) It was recommended that the plaintiff undergo bi-weekly individual therapy (*Id*.) On August 19, 2004, Eric Moffet, M.D., conducted a psychological examination on the plaintiff. (R. at 194-95.)

On August 26, 2004, the plaintiff was seen by Michael Wheatley, M.D., as a new patient. (R. at 197.) The plaintiff reported that she had previously been diagnosed with hypertension, high cholesterol, diabetes mellitus, and insomnia. (*Id*.) Dr. Wheatley noted that the plaintiff told him that she does not like taking her medications, and that her blood sugar level had been relatively well-controlled. (*Id*.) She also reported that she had suffered from major depression for over the past ten years and that it had become worse over the past four years since her father passed away. The plaintiff reported that Neurontin had helped her with neuropathy. (*Id*.) Dr.

Wheatley prescribed Topamax for the burning sensation the plaintiff had experienced in her feet, Elavil for sleep, Avandamet for diabetes, and Effexor for her depression. (*Id*.) Dr. Wheatley opined that the plaintiff had only a little tenderness in her back from time to time. He also noted that the plaintiff denied having suicidal or homicidal ideations. (*Id*.)

On September 2, 2004, the plaintiff called Dr. Moffet to complain about the side effects she experienced from taking her prescription of Effexor. (R. at 203.) Dr. Moffet advised her to stop taking the prescription of Effexor and prescribed Cymbalta. (*Id*.)

The plaintiff underwent a psychological disability examination by William Stanley, M.Ed., on February 14, 2005. (R. at 207-12.) Dr. Stanley noted that the plaintiff was cooperative throughout the evaluation, that she was clean, neat and appropriately dressed, and that she had driven herself to the evaluation. (R. at 207.) She was noted to have walked with a slow gait due to apparent foot and ankle pain; however, her fine motor movement was age appropriate. (*Id*.) On mental status examination, the plaintiff was alert and oriented times four and could name the current and past two presidents. (R. at 209.) She completed simple mathematical problems, and adequately interpreted proverbs. (*Id*.) She had no loose associations or illogical language, and appeared to be of average intellectual functioning. (*Id*.) On a daily

basis, the plaintiff reported preparing her own breakfast and attending to her grooming and dressing. She also stated that she answers the phone and files at her volunteer job, and returns home after work at which point she cooks, eats dinner, and watches television until bedtime. (*Id*.) The plaintiff noted that she had been sleeping well since she began taking her medications. (*Id*.) The plaintiff's social skills were adequate. (R. at 210.) The plaintiff was diagnosed with a mild to moderate major depressive disorder, generalized anxiety disorder, and memory impairment. (*Id*.)

Dr. Stanley assessed a current GAF score of between fifty and fifty-five, and found mild to moderate impairment in the plaintiff's ability to engage in work-related activities. (R at 211-12.) Dr. Stanley noted that the plaintiff had a good ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention concentration. (R. at 213-14.) It was also further noted that the plaintiff had a good ability to interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration. Although Dr. Stanley noted that the plaintiff suffered from some symptoms of mental illness that affected her daily life, he also noted that she was well enough to work some twenty hours a week as a volunteer. (R. at 215.)

Case 2:05-cv-00067-JPJ-PMS   Document 16   Filed 02/28/07   Page 9 of 16   Pageid#: 72

Cathy Sanders, a vocational expert, testified at the hearing before the ALJ. Sanders was asked to opine on the number and types of jobs available to an individual with the same education and background as the plaintiff, who was limited to simple, low-stress light work that involved standing for only one hour at a time before shifting positions. (R. at 243.) Sanders testified that at the sedentary level, there were jobs such as hand packager, administrative support worker, general office clerk, lock and key assembler, material handler, dispatcher, messenger, hand painter, and interviewer. (R. at 28.)

By a decision dated April 20, 2005, the ALJ found that the plaintiff was not disabled because she could return to her past relevant work.

III

The plaintiff first argues that there is a lack of substantial evidence in the record to support the ALJ's decision denying her claim because the ALJ failed to give full consideration to the findings of Dr. Stanley. The plaintiff claims that the ALJ improperly disregarded Dr. Stanley's findings regarding the severity of her mental impairments and the resulting impact of those impairments on her work ability.

The ALJ rejected the assessment of Dr. Stanley that the plaintiff's depression and anxiety resulted in a GAF between fifty and fifty-five. The plaintiff claims this

was error because it amounted to the ALJ improperly substituting his own views on the plaintiff's mental impairments over those of Dr. Stanley.

The decision of the ALJ must be affirmed where there is substantial evidence to support such a decision. *Laws*, 368 F.2d at 642. In determining whether substantial evidence supports the Commissioner's decision, the court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). As the record reflects, there was substantial evidence to support the ALJ's finding in this case.

The plaintiff was seen by Dr. Stanley on February 12, 2005, for a psychological examination. The record indicates that this was the only time the plaintiff was seen by Dr. Stanley.

The relevant regulations outline several factors that an ALJ is to consider when weighing a medical opinion. Among these factors are: (1) the examining relationship; (2) length of treatment relationship and the frequency of the examination; (3) nature and extent of the treatment relationship; (4) degree to which evidence supports the opinion; (4) consistency of the record as a whole; (5) specialization of the physician; and (6) other factors. 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6)

(2006). No case law, statute, or regulation requires an ALJ to accord the opinion of a one-time examiner the weight of a treating physician.

In this instance, the ALJ found that Dr. Stanley's findings were internally inconsistent and partially contradicted by other portions of the record. First, Dr. Stanley noted that the plaintiff had limitations relating to her mental impairments. However, in his medical assessment of her ability to do work-related activities, he rated her ability to function as either unlimited, above satisfactory, or satisfactory. He found no area in which the plaintiff was severely limited or had no ability to function. This assessment is most consistent with his findings that the plaintiff's depression, anxiety, and memory impairments were only mild to moderate.

Furthermore, Dr. Stanley noted that the plaintiff was able to hold down a volunteer job and work upwards of twenty hours per week in an office setting. Considering these facts, the ALJ was entitled to reject the assessment provided by Dr. Stanley in his narrative report. Additionally, Dr. Stanley's finding that the plaintiff had a GAF score of fifty to fifty-five was not necessarily consistent with his other findings regarding the plaintiff's depression, anxiety, and memory impairments. Although Dr. Stanley noted that the plaintiff had some mental illness, he also indicated that it did not prevent her from working more than twenty hours per week.

The plaintiff also contends that the ALJ erred because the entire record supports the GAF score assessed by Dr. Stanley. However, the ALJ was entitled to conclude that the record taken as a whole does not support the GAF score assessed by Dr. Stanley. Although the plaintiff was repeatedly diagnosed with depression and prescribed medications for treatment, a psychological disorder is not necessarily a disabling condition. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). The plaintiff must show some related functional loss. *Id.* The treatment notes from Dr. Bennett and the other Coeburn Communicare physicians do not reveal any specific functional loss related to the plaintiff's mental impairments.

The plaintiff also asserts that Dr. Moffet's findings provide support for Dr. Stanley's findings. Dr. Moffet assessed the plaintiff as having a GAF of forty-five. Such a score is indicative of serious symptoms such as suicidal ideation and serious impairments in social or occupational functioning. *See* The Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994). However, the record reflects that the plaintiff repeatedly denied pondering suicide and did not exhibit the serious impairments in social or occupational functioning that such a score indicates.

Furthermore, Ms. Helton's treatment notes also fail to support the GAF score assessed by Dr. Stanley. Ms. Helton's mental status examination revealed that the

plaintiff had an appropriate appearance, affect, and behavior, normal speech, fair insight, good communication, judgment, and memory, average intelligence, and no thought disorder, hallucinations, or suicidal or homicidal ideations. (R. at 191.) Considering the internal inconsistencies in Dr. Stanley's report and the other portions of the record that contradicted part of his findings, the ALJ was entitled to disregard the sum of Dr. Stanley's findings. Substantial evidence existed in the record to support the ALJ's decision that the plaintiff was not disabled due to mental impairments. Dr. Stanley's medical source statement indicated that the plaintiff had a satisfactory or above satisfactory ability to engage in all work-related activities. Additionally, after conducting a mental status examination on the plaintiff, Ms. Helton found that the plaintiff was oriented to time, place, person, and situation; her appearance, affect, and behavior were appropriate; her speech was normal; her insight was fair; her memory, judgment, and communication were good; her intelligence was average; and she had no thought disorder, hallucinations, or suicidal ideations.

Finally, the plaintiff's self-described daily activities do not appear to be consistent with a disabling mental condition. The ALJ sufficiently articulated his reasons for disregarding the opinion of Dr. Stanley and these reasons were supported by the record.

- 14 -

IV

The plaintiff further argues that the ALJ erred in assessing her residual functional capacity. The ALJ limited the plaintiff to simple, low stress jobs at the light level of exertion that involve standing for no more than one hour at a time. The record supports the ALJ's assessment of the plaintiff's residual functional capacity.

Although the plaintiff claims her medical history establishes severe exertional and non-exertional impairments on her part, the objective medical evidence and her own reported activities do not substantiate such severe impairments. The plaintiff reported foot and back pain during her visits with Dr. Bennett. However, Dr. Bennett noted that a physical examination revealed no neurological deficits, no diabetic ulcers on her feet, and no clubbing, cyanosis, or edema. The results of an arterial duplex study revealed only mild atherosclerotic changes and no significant stenosis. A MRI of the lumbar spine was normal and only indicated mild proliferative changes. Therefore, the objective medical evidence provided substantial evidence for the ALJ to base his finding regarding the plaintiff's residual functional capacity.

Furthermore, the plaintiff's own reported daily activities are inconsistent with the disabling limitations that she argues the ALJ should have found. The plaintiff works upwards of twenty hours per week as a volunteer office assistant. The plaintiff travels several miles to this volunteer job and answers the phone and files while there.

In addition to her volunteer work, the plaintiff also reported that she prepares breakfast for herself, attends to her grooming and dressing, cooks dinner for herself and her husband, watches television, and attends church services on a regular basis. Such activities are entirely consistent with the residual functional capacity the ALJ assessed. Accordingly, substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled.

IV

For the reasons stated, the plaintiff's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: February 28, 2007

/s/ JAMES P. JONES
Chief United States District Judge